UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SIMS A. WHALEN,<br>Plaintiff,<br><br>v.<br><br>GLEAM, LLC, BRISTOL YACHT CHARTERS, LLC, LENMARINE, INC., and ANDREW TYSKA,<br>Defendants. | C.A. No. 1:24-cv-00347-MSM-PAS |
| SIMS A. WHALEN,<br>Plaintiff,<br><br>v.<br><br>ANDREW TYSKA and DENNIS GUNDERSON,<br>Defendants. | C.A. No. 1:24-cv-00523-MSM-PAS |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

This is a maritime personal injury case stemming from injuries sustained by the plaintiff, Sims Whalen, while aboard a sailing vessel during the 44th International Classic Regatta in Newport, Rhode Island on September 3, 2023. The defendants are Gleam, LLC ("Gleam"), a limited liability company formed for the ownership and operation of an eponymous sailing vessel involved in Mr. Whalen's injury (the "Vessel"), Lenmarine, Inc., a maritime services company ("Lenmarine"),

Bristol Yacht Charters, LLC, a yacht chartering company ("BYC"), Andrew Tyska, Gleam's sole member and Lenmarine's CEO, and Dennis Gunderson, Gleam's manager and Lenmarine's general manager (collectively, "Defendants"). Mr. Whalen sued Defendants, alleging statutory and general maritime law claims in two cases that are consolidated for discovery. (C.A. No. 1:24-cv-00347: ECF No. 38-1; C.A. No. 1:24-cv-00523: ECF No. 1.)[1]

Before the Court is Lenmarine's Motion for Summary Judgment. (ECF No. 57.) Also before the Court is Gleam, BYC, Mr. Tyska, and Mr. Gunderson's Motion for Summary Judgment. (ECF No. 59.) Through these Motions, Defendants seek dismissal of all Mr. Whalen's claims and a declaratory judgment that Mr. Whalen is not entitled to maintenance and cure. For the following reasons, the Court GRANTS Defendants' Motions with respect to Counts I, II, and III of Mr. Whalen's Third Amended Complaint in C.A. No. 1:24-cv-00347, DENIES Defendants' Motions with respect to all his other claims, and GRANTS Defendants' requested declaratory judgment.

## I. BACKGROUND

At the time of Mr. Whalen's injury, he was a full-time student at the College of Charleston and was a member of the college's offshore sailing team. (ECF No. 60-1 at 5–9.) Outside his academic pursuits, he had some professional and recreational sailing experience, and he held a Transportation Worker Identification Credential, a

[1] The Court has directed the parties to file all pleadings in the lead case, C.A. No. 1:24-cv-00347. The Court's ECF citations hereinafter refer to that case except where specified otherwise.

credential issued for professional maritime work. *Id.* at 7–16. One of the Vessel's crew invited Mr. Whalen and other members of the offshore sailing team to join the Vessel for the 44th International Classic Regatta in Newport, Rhode Island. (ECF No. 60-2 at 6–7.) Mr. Whalen's time on board the Vessel spanned two days for the Regatta itself (with him disembarking in the evenings), as well as some additional hours on a prior practice day. (ECF Nos. 60-1 at 28; 60-3 at 8, 27.) He was not paid for his time aboard the Vessel. (ECF No. 60-3 at 22.)

The parties dispute the circumstances under which Mr. Whalen was injured. According to him, he was assigned to operate the mainsheet pedestal winch—a device which controls the rope used to manage the boom (the horizontal pole that extends outward from the mast and is connected to the sail)—aboard the Vessel during the Regatta. (ECF No. 65 ¶ 17.) He contends that he was injured on the second day of the Regatta while the Vessel performed a jibe, a sailing maneuver to change a vessel's direction in which the sail—and its boom—shifts from one side of the vessel to the other. *Id.* ¶ 31. Mr. Whalen's subsequent head injuries left him with limited to no memory of the incident, but a witness testified, albeit without complete certainty, that Mr. Whalen was either struck by the boom or was thrown over the mainsheet pedestal winch when the slack mainsheet caught his neck. *Id.* ¶ 32; ECF No. 67 at 199–200. Mr. Whalen suffered a traumatic brain injury and alleges that he suffered other neurological issues as a result of his injury aboard the Vessel. (ECF Nos. 46 at 1; 67-2 at 57.)

Defendants do not deny that Mr. Whalen was injured while operating the mainsheet pedestal winch while aboard the Vessel. They do, however, challenge the characterization of his service aboard the Vessel as an "assignment" akin to a crew position, and instead suggest that he was merely invited to assist with the mainsheet pedestal winch because of his prior sailing experience. (ECF No. 74 at 5.) Defendants further contend that the Vessel was not jibing at the time of his injury, and that the precise means through which Mr. Whalen was injured are unknown, though they suggest that it was likely the result of his own negligence. *Id.* at 8.

Mr. Whalen first sued Gleam for claims stemming from his injuries aboard the Vessel. (ECF No. 1.) He then brought a separate action against Mr. Tyska and Mr. Gunderson, alleging statutory claims under 46 U.S.C. § 30103 (Counts I and II) and general maritime negligence (Count III). (C.A. No. 1:24-cv-00523: ECF No. 1.) After those cases were consolidated, he amended his initial complaint, which now asserts claims against Gleam, BYC, Lenmarine, and Tyska for negligence under the Jones Act (Count I), unseaworthiness (Count II), maintenance and cure (Count III), and general maritime negligence (Count IV). (ECF No. 46 ¶¶ 62–106.) Those defendants then counterclaimed against Mr. Whalen, seeking a declaratory judgment that Mr. Whalen is not a seaman and that he is consequently not entitled to maintenance and cure. (ECF No. 55 ¶¶ 29–48.)

## II. STANDARD OF REVIEW

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v.*

*Osco Drug Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (quoting Adv. Comm. Notes to Fed. R. Civ. P. 56). Summary judgment can be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." *ATC Realty, LLC v. Town of Kingston, N.H.*, 303 F.3d 91, 94 (1st Cir. 2002) (quoting *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993)).

In ruling on a motion for summary judgment, the Court must examine the record evidence in the light most favorable to the nonmoving party and draw all permissible inferences in their favor *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir. 2000) (citing *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir. 1996)). The Court may not choose between plausible but conflicting inferences based on the evidence at the summary judgment stage. *Coyne v. Taber Partners I,* 53 F.3d 454, 460 (1st Cir. 1995). Even if the evidence appears to favor one party or the other, so long as reasonable people might draw different conclusions from it, summary judgment will be improper. *Gannon v. Narragansett Elec. Co.,* 777 F. Supp. 167, 169 (D.R.I. 1991) (citing and partially quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure,* § 2725, at 104 (1983)).

## III. DISCUSSION

Defendants collectively advance three arguments against Mr. Whalen's claims. First, both Lenmarine and Mr. Tyska argue that Mr. Whalen's claims against them must be dismissed because, based on principles of corporate separateness, they should not be liable for any claims stemming from Gleam or BYC's conduct, and because he cannot show that the "corporate veil" should be "pierced." (ECF Nos. 57; 59 at 16–19.) Second, Defendants argue that Mr. Whalen's Jones Act negligence, maintenance and cure, and unseaworthiness claims under Counts I, II, and III of his Third Amended Complaint (ECF No. 46) must be dismissed because he did not qualify as a "seaman" at the time of his injuries. (ECF No. 59 at 9–16.) Third, Defendants argue that Mr. Whalen's alternative maritime negligence claim under Count IV must be dismissed because no reasonable jury could find that Defendants breached any duty owed to him. *Id.* at 19–27. While Defendants also move for summary judgment on Mr. Whalen's claims against Mr. Tyska and Mr. Gunderson in the consolidated action (C.A. No. 1:24-cv-00523), *see* ECF No. 59 at 1, they do not make any substantive arguments related to those claims in their present Motions.

At the outset, the Court notes some dispute between the parties over the extent to which Rhode Island state law applies to Mr. Whalen's claims. *See* ECF Nos. 57 at 8–15, 59 at 16–19; *compare* ECF No. 61 at 5–7. The parties appear to agree, however, that his tort claims fall within the Court's admiralty jurisdiction, given that his injury "occurred on navigable water" during conduct bearing a significant relationship to traditional maritime activity. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge &*

*Dock Co.*, 513 U.S. 527, 534 (1995). While Mr. Whalen invokes the Court's diversity jurisdiction for his maritime negligence claim in the alternative under Count IV, the First Circuit has clarified that "a district court should properly apply federal maritime law once it has determined that the tort is a maritime one even when diversity jurisdiction is invoked." *Hamburg-Amerika Linie v. Gulf Puerto Rico Lines*, Inc., 579 F.2d 115, 117 (1st Cir. 1978). As such, and because his other claims are all expressly brought under federal statutory causes of action, federal common law applies to all of Mr. Whalen's claims. *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law. Absent a relevant statute, the general maritime law, as developed by the judiciary, applies.") (internal citation omitted); *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689 n.4 (1950) ("The jurisdiction of a court of admiralty to determine the question of alter ego is undoubted."); *Nieto-Vicenty v. Valledor*, 984 F. Supp. 2d 14, 16–17 (D.P.R. 2013) ("Federal courts sitting in admiralty must apply federal common law when examining corporate identity.") (collecting cases).

Having determined the governing law, the Court addresses each of Defendants' arguments in turn.

### A. Disputes of Material Fact Preclude Summary Judgment on Mr. Whalen's Veil-Piercing Claims Against Lenmarine and Mr. Tyska

"[I]t is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations." *Dewberry Group, Inc. v. Dewberry Eng'rs Inc.*, 604 U.S. 321, 327 (2025)

(quoting *Agency for Int'l Dev. v. All. for Open Soc'y Int'l Inc.*, 591 U.S. 430, 435 (2020)) (alteration in original). This is true even where the entities share a common owner. *Id.* But in some cases, courts may "pierce the corporate veil" to impose legal liability on one corporation for the actions of another closely related corporation. *Id.* (quoting *United States v. Bestfoods*, 524 U.S. 51, 62 (1998)).

Whether to allow veil-piercing is a heavily fact-dependent question. *Crane v. Green & Freedman Baking Co., Inc.*, 134 F.3d 17, 21 (1st Cir. 1998). The general rule is that veil-piercing will only be allowed where "considerations of fairness or public necessity warrant such a step." *InterGen N.V. v. Grina*, 344 F.3d 134, 148 (1st Cir. 2003). Factors courts have considered include:

> (1) inadequate capitalization in light of the purposes for which the corporation was organized, (2) extensive or pervasive control by the shareholder or shareholders, (3) intermingling of the corporation's properties or accounts with those of its owner, (4) failure to observe corporate formalities and separateness, (5) siphoning of funds from the corporation, (6) absence of corporate records, and (7) nonfunctioning officers or directors.

*In re Acushnet River & New Bedford Harbor Procs. Re Alleged PCB Pollution*, 675 F. Supp. 22, 33 (D. Mass. 1987) (citing *Anderson v. Abbott*, 321 U.S. 349, 362 (1944)); *accord Nieto-Vicenty*, 984 F. Supp. 2d at16–17 (applying these factors in the maritime law context).

In the context of claims related to employer-sponsored benefit plans, where veil-piercing is often at issue, courts have generally required some finding of fraudulent intent before allowing that remedy. *United Elec., Radio and Machine Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1093 (1st Cir. 1992). Outside that

context, veil-piercing is usually an issue to be determined by a jury because it is so fact specific. *Crane*, 134 F.3d at 22 (*quoting Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 137 (2d Cir. 1991)). The First Circuit has avoided endorsing any sort of "litmus test" for when to disregard corporate form. *Brotherhood of Locomotive Engineers*, 210 F.3d at 26. That said, in tort cases, undercapitalization is often a critical factor due to the concern that a cash-strapped company may be unable to pay a judgment to a prevailing plaintiff whom it injured. *De Castro v. Sanifill, Inc.*, 198 F.3d 282, 285 (1st Cir. 1999).

Here, Mr. Whalen's Third Amended Complaint "seeks to pierce the corporate veil and disregard the separateness of the Defendants and Andrew Tyska where necessary to achieve equity and prevent fraud or injustice." (ECF No. 46 ¶ 25.) But Lenmarine contends that the following undisputed record demonstrates its corporate separateness:

> Lenmarine employs its own workforce, maintains payroll, operates multiple commercial boatyards across three states, and provides marine services to hundreds of customers unrelated to the Plaintiff or the other Defendants in this case. Lenmarine observes corporate formalities through written Articles of Incorporation, Bylaws, and governance records reflecting stockholder and director actions. Lenmarine maintains separate finances through its own accounting and invoicing systems (using PierVantage software), issues work orders and invoices in its own name, tracks payments and receivables independently, and expects payment in the ordinary course, including for work on vessels associated with the Defendant, Gleam, LLC. It generates revenue from diverse customers. Critically, there is no evidence of missing corporate records, disregard of corporate formalities, commingling of assets, siphoning of funds, undercapitalization, or any misuse of the corporate form.

(ECF No. 57 at 10) (internal citations omitted). Defendants argue that, for similar reasons, the corporate veil should not be pierced with respect to Mr. Tyska. (ECF No. 59 at 16–19.)

In response, Mr. Whalen cites an extensive list of facts and circumstances, complete with exhibits, that he argues raises questions of material fact as to his veil-piercing claims. (ECF No. 61 at 11–31.) The thrust of the evidence he cites suggests some financial and operational overlap between Defendants (for example, regular invoices to Lenmarine for services and materials related to the Vessel) and conflicting accounts of Defendants' corporate separateness (for example, emails indicating Lenmarine's involvement in the insurance process following Mr. Whalen's alleged injuries). *See id.* He argues that the "same factual record concerning overlapping control, personnel, accounting practices and allocation of vessel-related responsibilities applies equally" to Gleam and BYC. (ECF No. 64 at 30.) He does not, however, identify any evidence suggesting any fraudulent conduct or meaningful undercapitalization by Defendants.

While the lack of evidence of any fraud or undercapitalization by Defendants weighs against veil-piercing here, there are clear factual disputes between the parties with respect to other factors courts have considered in this context. Given the First Circuit's admonition in *Crane* that fact-specific veil-piercing determinations should, outside the ERISA context, be normally left to juries, and as a reasonable jury could make a veil-piercing determination against Defendants, summary judgment on this issue is not warranted.

### B. Summary Judgment Against Mr. Whalen's Seaman Claims is Warranted

"The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (citing 46 U.S.C.App. § 688(a)). Mr. Whalen's other two claims are made under general maritime law. A claim of unseaworthiness is "based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea," while "maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001). For Mr. Whalen to prevail on any of these three claims, he must demonstrate that he was, in fact, a "seaman." *See Chandris*, 515 U.S. at 354–55; *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 341–42 (1991)

An employee must prove two essential requirements for a court to find that they are a seaman. First, the employee must perform duties that aid the function of the vessel or contribute to its mission. *Chandris*, 515 U.S. at 368. This requirement is "very broad," applying to "[a]ll who work at sea in the service of a ship." *Id.* (quoting *Wilander*, 498 U.S. at 354).

Second, the employee must have a substantial temporal and functional connection to a vessel in navigation. *Id.* The purpose of this requirement is "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id.* A clearer test was needed because courts had

struggled to draw the distinction between different categories of maritime workers due to "the myriad circumstances in which men go upon the water." *Id.* at 356 (quoting *Brown v. ITT Rayonier, Inc.*, 497 F.2d 234, 236 (5th Cir. 1974)).

Whether a person is a member of a crew and can therefore be treated as a seaman is a "mixed question of law and fact." *Chandris*, 515 U.S. at 369. The court's duty is to define the appropriate legal standard for seaman status. *Id.* If reasonable persons applying that standard could disagree as to whether an employee was a seaman, that is a question for a jury. *Id.* (citing *Wilander*, 498 U.S. at 356). The Supreme Court in *Chandris* endorsed "an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at 371. That rule of thumb is only a "guideline" that may be departed from in "appropriate cases." But where no reasonable jury could find that an employee had a sufficient temporal connection to a vessel in navigation, a court may grant summary judgment against the employee's seaman status. *Id.*

Here, the question for the Court is whether Mr. Whalen cannot, as a matter of law, be considered a seaman based on his two- or three-day unpaid service aboard the Vessel. On this issue, the parties present diverging authority from other cases in which courts have grappled with similar questions as to the seaman status of individuals who volunteer for temporary service aboard vessels. For example, Defendants point to *Matter of White*, where the court found that a recreational sailor who was injured while volunteering aboard a sailboat during a race—facts strikingly

similar to those at issue here—had presented insufficient evidence from which a jury could conclude she qualified as a seaman. *See* 603 F. Supp. 3d 58, 72 (W.D.N.Y. 2022); *see also Hardesty v. Rossi*, No. CIV. JFM-94-2320, 1995 WL 688416, at *4 (D. Md. Aug. 15, 1995) (granting summary judgment against seaman claims where the plaintiff lacked employment relationship with the vessel and had spent only a few days aboard it). By contrast, Mr. Whalen points to *Boy Scouts of Am. v. Graham*, where the Ninth Circuit denied summary judgment against seaman claims brought by a volunteer boy scout leader following injuries sustained on the third day of a training cruise. 86 F.3d 861, 866 (9th Cir. 1996), *as amended on denial of reh'g and reh'g* en banc (July 13, 1996); *see also Wilson v. Butler*, No. 3:07-CV-526-J-32HTSC, 2009 WL 111685, at *3 (M.D. Fla. Jan. 15, 2009) (denying summary judgment against seaman claims despite the voyage at issue spanning only three to four days).

The cases cited by Defendants are the more persuasive. *Chandris* was surely not intended to expand access to traditional maritime remedies to individuals with only temporary recreational connections to vessels. The purpose behind these remedies—which entitle a seaman not only to compensation for an injury itself, but also expenses like food and lodging during recovery—is explained by the dissent in *Graham*:

> The history of maintenance and cure, afforded by Admiralty law long before Congress enacted the Jones Act incorporating it, is inconsistent with the extension of Jones Act benefits to essentially recreational boaters. The obligation of maintenance and cure has its source in the employment relationship and the wardship of Admiralty. Traditionally, maintenance and cure served three purposes: (1) to protect the poor and improvident seaman while ill in foreign ports, (2) to encourage ship

> owners to protect the seaman's safety and health while in service, and (3) to induce employment in the merchant marine.

86 F.3d at 868–69 (Goodwin, J., dissenting) (internal citations omitted). Those three purposes are hardly implicated by the facts here.

With that understanding of *Chandris* in mind, and laying aside the question of whether Mr. Whalen's volunteer service aboard the Vessel could constitute the required *employment-related* connection to a vessel in navigation under the first prong of the test for seaman status, *see* 515 U.S. at 368, it is undisputed that Mr. Whalen's time aboard the Vessel spanned only two or three days at most. This was surely well below 30 percent of his time, particularly given that he was a full-time student when he was injured. While this threshold, as explained in *Chandris*, is no more than a "guideline," *see id.* at 371, "guidelines should guide somewhere." *Graham*, 86 F.3d at 868 (Goodwin, J., dissenting). And as there are no circumstances in this case that would make it not an "ordinary case" to which this rule of thumb should apply, and absent any other connection between Mr. Whalen and the Vessel, the Court concludes that he "has a clearly inadequate temporal connection to vessels in navigation." *See Chandris*, 515 U.S. at 371. Summary judgment against his claims that rely on his seaman status—Counts I, II, and III of his Third Amended Complaint—is therefore appropriate.

### C. Disputes of Material Fact Preclude Summary Judgment on Mr. Whalen's General Maritime Negligence Claims

Mr. Whalen's remaining claims are for negligence under general maritime law (Count IV of his Third Amended Complaint and Count III in the consolidated action)

and for liability of master, mate, engineer, and pilot under 46 U.S.C. § 30103 (Counts I and II in the consolidated action). None of those claims rely on his status as a seaman. *See McAleer v. Smith*, 57 F.3d 109, 116 (1st Cir. 1995) ("As a general matter, anyone who is the victim of a maritime tort is entitled to bring an action in admiralty."); *Bobola v. F/V Expectation*, 204 F. Supp. 3d 382, 391 (D. Mass. 2016) (determining that "the clear language of Section 30103 now indicates that a 'person,' injured at sea while aboard a vessel, can bring a claim against the vessel's captain for negligence or willful misconduct," and that this cause of action is available to *both* seamen and non-seamen). And as Defendants present no substantive argument supporting dismissal of the claims in the consolidated action, summary judgment on those claims is not warranted.

The only remaining question, then, is whether there is an issue of material fact regarding Mr. Whalen's general maritime negligence claims under Count IV of his Third Amended Complaint. To prevail on these claims, Mr. Whalen must satisfy the elements of a traditional tort claim. He must present sufficient evidence to prove that he was injured as a proximate result of Defendants' breach of a duty of care owed to him. *See Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23, 29 (1st Cir. 2018) ("While the familiar elements of negligence—duty, breach, causation, and damages—apply in maritime cases, we look to 'the principles of maritime negligence' to provide substance to each element.") (citing *La Esperanza de P.R., Inc. v. Perez y Cia. de Puerto Rico, Inc.*, 124 F.3d 10, 17 (1st Cir. 1997)). Summary judgment against

Mr. Whalen will only be justified if there are no genuine disputes of material facts as to these elements.

A shipowner owes a duty of reasonable care towards those lawfully aboard the shipowner's vessel who are not part of its crew. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959). The degree of care required is proportionate to the apparent risk posed by the vessel and its operations. *Muratore v. M/S Scotia Prince*, 845 F.2d 347, 353 (1st Cir. 1988). A captain breaches this duty if he "ma[kes] a decision which nautical experience and good seamanship would condemn as inexpedient and unjustifiable at the time and under the circumstances." *DiMillo v. Sheepscot Pilots, Inc.*, 870 F.2d 746, 748 (1st Cir. 1989) (quoting *The Lizzie D. Shaw*, 47 F.2d 820, 822 (3d Cir. 1931)) (alteration in original).

Here, Defendants argue at length that Mr. Whalen was not a member of the Vessel's crew. *See, e.g.*, ECF No. 59 at 13 ("The Plaintiff was a college student at the time of the incident, not a professional mariner, and was not hired or paid as a member of the Vessel's crew."). They therefore owed him a traditional duty of reasonable care under *Kermarec*. Whether this duty was breached by Defendants' conduct is clearly in dispute, particularly given the extent to which Defendants challenge Mr. Whalen's account of his injury. *See* ECF No. 74 at 8–10. Defendants' arguments against his general negligence claims largely rely on their mistaken invocation of Rhode Island state law or on their own interpretation of the evidence presented here. *See* ECF No. 59 at 19–27. But with the record construed in the light most favorable to Mr. Whalen, as the non-moving party, the Court finds that

Defendants have not met their burden of showing that they are entitled to judgment as a matter of law.

## IV. CONCLUSION

For these reasons, the Court GRANTS Defendants' Motions for Summary Judgment (ECF Nos. 57 and 59) with respect to Counts I, II, and III of Mr. Whalen's Third Amended Complaint in C.A. No. 1:24-cv-00347 but DENIES Defendants' Motions with respect to all his other claims. Consistent with the Court's finding that Mr. Whalen was not a seaman and is therefore not entitled to maintenance and cure, the Court also GRANTS Defendants' requested declaratory judgment under Count I of their Counterclaim (ECF No. 55).

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge

September 4, 2026